**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MOSHE Z. MARVIT,<br><br>*Plaintiff*,<br><br>*v.*<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Defendants*. | No. 1:26-cv-1563-RCL |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ........ 1
BACKGROUND ........ 1
I. The FMSHRC and Its Statutory Framework ........ 1
II. This Litigation ........ 3
LEGAL STANDARD ........ 3
ARGUMENT ........ 4
I. The President Lawfully Removed Marvit from His Office ........ 4
II. Marvit's Other Claims Duplicate His Statutory Claim, and None Has Merit ........ 10
CONCLUSION ........ 14

## TABLE OF AUTHORITIES

### Cases

*Am. Hosp. Ass'n v. Burwell*,
812 F.3d 183 (D.C. Cir. 2016)........ 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........ 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........ 3, 4

*C&E Servs., Inc. v. D.C. Water & Sewer Auth.*,
310 F.3d 197 (D.C. Cir. 2002)........ 12

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004)........ 13

*City of Arlington v. FCC*,
569 U.S. 290 (2013)........ 6, 11

*Consol. Edison Co. v. Ashcroft*,
286 F.3d 600 (D.C. Cir. 2002)........ 13

*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
944 F.3d 945 (D.C. Cir. 2019)........ 13

*Freytag v. Comm'r of Internal Revenue*,
501 U.S. 868 (1991)........ 7

*Gustave-Schmidt v. Chao*,
226 F. Supp. 2d 191 (D.D.C. 2002)........ 4

*Harris v. Bessent*,
160 F.4th 1235 (D.C. Cir. 2025)........ *passim*

*Harris v. Bessent* ,
No. 25-1110, --- U.S.---, 2026 WL 1871323 (U.S. June 30, 2026)........ 4

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
146 S. Ct. 1391 (2026)........ 3

*Humphrey's Executor v. United States*,
295 U.S. 602 (1935)........ 5

*Myers v. United States*,
272 U.S. 52 (1926)........ *passim*

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*,
458 U.S. 50 (1982)........ 8

*Ortiz v. United States*,
585 U.S. 427........ 8

*Schilling v. Rogers*,
363 U.S. 666 (1960) .... 12

*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020) .... *passim*

*Skelly Oil Co. v. Phillips Petroleum Co.*,
339 U.S. 667 (1950) .... 12

*Smith v. Clinton*,
253 F. Supp. 3d 222 (D.D.C. 2017) .... 4

*Stern v. Marshall*,
564 U.S. 462 (2011) .... 7

*Taylor v. Beckham*,
178 U.S. 548 (1900) .... 12

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994) .... 2

*Trump v. Slaughter*,
No. 25-332, 609 U.S. ---, 2026 WL 1855612 (U.S. June 29, 2026) .... *passim*

*Smith v. Clinton*,
886 F.3d 122 (D.C. Cir. 2018) .... 4

*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021) .... 6, 11

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001) .... 7

*Wilbur v. United States*,
281 U.S. 206 (1929) .... 13

**U.S. Constitution**

U.S. Const. art. III .... 8

**U.S. Code**

5 U.S.C. § 706(2) .... 10

15 U.S.C. § 41 .... 5

26 U.S.C. § 7441 .... 8

28 U.S.C. § 171(a) .... 8

28 U.S.C. § 2201 .... 12

30 U.S.C. § 801 .... 1

30 U.S.C. § 815(c) .... 2

30 U.S.C. § 816(b) .... 9

30 U.S.C. § 820(i) .... 9

30 U.S.C. § 823(a) .......... 1, 2, 8

30 U.S.C. § 823(b)(1) .......... 1, 5

30 U.S.C. § 823(c) .......... 11

30 U.S.C. § 823(d)(1)-(2) .......... 6

Administrative Procedure Act, 5 U.S.C. §§ 706(1), 706(2) .......... 10

**Other Authorities**

16 Documentary History of the First Federal Congress of the United States of America (C. Bickford, K. Bowling, H. Veit, & W. diGiacomantonio eds. 2004) .......... 5

3 William Blackstone, Commentaries on the Laws of England (1768) .......... 8

## INTRODUCTION

Plaintiff Moshe Z. Marvit was removed from his position as a member of the Federal Mine Safety and Health Review Commission ("FMSHRC" or the "Commission") by the President. The Commission is an executive agency that reviews legal disputes arising under the Federal Mine Safety and Health Act of 1977 (the "Mine Act"), 30 U.S.C. § 801, *et seq*., which gives the President alone the authority to remove commissioners. 30 U.S.C. § 823(b)(1).

After the Supreme Court's decision in *Trump v. Slaughter*, No. 25-332, 609 U.S. ---, 2026 WL 1855612 (U.S. June 29, 2026), it cannot be disputed that the President had the authority to remove Marvit from his office in an executive agency. The Commission is an executive agency, exercising executive power, nestled in the Executive Branch. The President is thus "entitled to cut [Marvit's] tenure short." *Id.* at *18.

That holding is reason to dismiss Marvit's action in full. Although he lists seven claims for relief under various legal theories, all boil down to his allegation that his "termination by President Trump" was "unlawful and unjustified." Compl. ¶ 1; *see id.* at 13 (Prayer for Relief) (asking the Court to declare Marvit's removal unlawful and to declare that he cannot be removed from office without cause). That conclusion is incorrect under *Slaughter*, so this case must be dismissed.

## BACKGROUND

### I. The FMSHRC and Its Statutory Framework

The Mine Act established the FMSHRC as a permanent body. The FMSHRC has five members appointed by the President with advice and consent of the Senate, and the President designates one of those members as Chairman of the Commission. 30 U.S.C. § 823(a). The Mine Act provides that members' terms shall be six years and says that members may be removed for inefficiency, neglect of duty, or malfeasance in office. *Id.* § 823(b)(1).

When the Secretary issues a citation or order requiring a civil penalty, any "action[] before the Commission [is] initiated not by the Secretary but by a mine operator who claims to be aggrieved." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 209 (1994) (citing 30 U.S.C. § 815(a)). Meanwhile, discrimination and retaliation cases are brought by the Secretary on behalf of an aggrieved miner or directly by a miner. 30 U.S.C. § 815(c). The FMSHRC hears appeals of cases brought before administrative law judges ("ALJs") appointed by the Commission and issues orders that bind aggrieved persons and the Secretary of Labor. *Id.* § 823(d)(1)-(2). Persons aggrieved by an order of the Commission may petition a U.S. court of appeals for review of the Commission's order, *id.* § 816(a), and the Secretary of Labor can also obtain review of the Commission's orders in the same manner. *Id.* § 816(b).

The FMSHRC also prescribes the rules of procedure governing ALJs. *Id.* § 823(d)(2). The Commission can assess civil penalties, *id.* § 820(i), and once those penalties have been proposed, no one—including the Secretary—can "compromise[], mitigate[], or settle[]" those penalties "except with the approval of the Commission." *Id.* § 820(k). The Commission may order compensation to miners if a mine is idled due to several statutorily prescribed actions by the mine's owner. *Id.* § 821. Additionally, the FMSHRC can (1) compel the attendance and testimony of witnesses; (2) require "the production of books, papers, or documents, or objects"; and (3) order testimony to be taken by deposition at any stage of the proceedings. *Id.* § 823(e). If a person fails or refuses to obey a subpoena or an order of the Commission to appear, testify, or product evidence, then the Commission may ask a U.S. district court or a U.S. court of any territory to order such person to comply. *Id.*

## II. This Litigation

Plaintiff Marvit was a Commissioner on the FMSHRC from March 2024 until his removal on May 1, 2026. Compl. ¶¶ 49, 53, 56. He was nominated by President Biden and confirmed by the Senate. *Id.* ¶¶ 51-52. His term would have expired on August 30, 2028, if not for his removal. *Id.* ¶ 51.

On May 1, 2026, Special Assistant to the President Sarah Calvis of the Presidential Personnel Office sent an email to Marvit informing him of his removal, effective immediately. *Id.* ¶ 56. Afterward, Marvit lost access to his government-owned devices, and FMSHRC Chair Marco M. Rajkovich, Jr. informed the Commission's staff that Marvit was no longer with the Commission. *Id.* ¶¶ 58-60.

On May 7, 2026, Marvit sued to challenge his removal. *See generally* Compl. Though Marvit alleges seven causes of action, *see id.* ¶¶ 63-81, all boil down to whether he was lawfully removed from his office. Marvit asks the Court to declare that his removal is unlawful, that he may remain on the Commission, and that FMSHRC Commissioners may not be removed except for inefficiency, neglect of duty, or malfeasance in office. *See* Compl. at 13 (Prayer for Relief).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires more than "a sheer possibility that a defendant has acted unlawfully" and "unadorned . . . accusation[s]." *Id.*; *see also Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, 1399 (2026) (same). Instead, a complaint must plead facts sufficient to "nudge[] [the plaintiff's]

claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. On a Rule 12(b)(6) motion, the Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Smith v. Clinton*, 253 F. Supp. 3d 222, 234 (D.D.C. 2017) (quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)), *aff'd*, 886 F.3d 122 (D.C. Cir. 2018) (per curiam).

**ARGUMENT**

**I. The President Lawfully Removed Marvit from His Office**

The President lawfully removed Marvit from his office. The FMSHRC is an Executive Branch agency subordinate to the President, meaning that under Supreme Court precedent, the President can remove Marvit without cause. Count 1 of the Complaint—that the President violated the Mine Act by removing him from office because Marvit had a "clear entitlement to remain in office," *see* Compl. ¶¶ 63-65—fails as a matter of law.

1. The President has the power to remove FMSHRC Commissioners without cause. Article II of the U.S. Constitution vests "[t]he executive Power" of the United States "in a President," U.S. Const., art. II, § 1, cl. 1, and requires the President to "take Care that the Laws be faithfully executed." *Id.* § 3. The Supreme Court has long recognized that these clauses "prevent Congress from restricting the President's ability to remove government officers who wield significant executive power on his behalf." *Harris v. Bessent*, 160 F.4th 1235, 1245-46 (D.C. Cir. 2025) (citing *Myers v. United States*, 272 U.S. 52, 117-18 (1926)), *cert. denied,* No. 25-1110, --- U.S.---, 2026 WL 1871323 (U.S. June 30, 2026) (Mem.). That recognition goes back to the Founding, as the First Congress "endorsed the view that 'the Executive function of removal' was 'vested in the President,' a decision 'most consonant to the text of the Constitution' and 'to the requisite responsibility and harmony in the Executive Department.'" *Slaughter*, 2026 WL 1855612, at *10

(quoting 16 Documentary History of the First Federal Congress of the United States of America 893 (C. Bickford, K. Bowling, H. Veit, & W. diGiacomantonio eds. 2004)). Previously, in *Humphrey's Executor v. United States*, the Supreme Court had said there was an exception to the *Myers* rule when an executive agency's powers were "quasi-legislative or quasi-judicial." *See* 295 U.S. 602, 629 (1935) (citation modified). But the Supreme Court recently overruled *Humphrey's* in *Slaughter*. *See* 2026 WL 1855612, at *15 ("If anything more is left of *Humphrey's*, we overrule it. *Humphrey's* has for decades been a result in search of a rationale."). Thus, it is now clear that whenever an executive agency exercises power, the President must have the ability to remove its principal officers at will.

The Mine Act's statutory restriction on the President's power is thus invalid. Even though the Mine Act has a statutory restriction purporting to limit Commissioners' removals to instances of inefficiency, neglect of duty, or malfeasance in office, 30 U.S.C. § 823(b)(1), that provision is no longer operative after *Slaughter*. There, the Supreme Court held that for-cause removal protections for Commissioners of the Federal Trade Commission ("FTC")—which limited FTC Commissioners' removals to "inefficiency, neglect of duty, or malfeasance in office," 15 U.S.C. § 41—were "contrary to the separation of powers enshrined in the Constitution" because "[s]ubordinates who exercise the President's power are subject to removal by him." 2026 WL 1855612 at *6, 21. After *Slaughter*, it is clear that any official who "unquestionably exercises executive power . . . must therefore be controlled by the Chief Executive, in whom such power is vested," and that the President is thus "entitled to cut [those officials'] tenure short." *Id.* at *18. All "those who fall within the President's 'general administrative control' must be removable by the President at will." *Id.* (quoting *Myers*, 272 U.S. at 135).

Like FTC Commissioners, FMSHRC Commissioners are removable by the President at-will because they exercise executive power and are "within the President's 'general administrative control.'" *Id.* (quoting *Myers*, 272 U.S. at 135). The Commission has significant powers: it appoints all ALJs and establishes the rules of procedures governed by them, 30 U.S.C. § 823(d)(1)-(2); it conducts in-house appeals and reviews those ALJs' decisions, *id.*; it assesses civil penalties and must be consulted regarding the possibility of proposed settlements once those penalties have been proposed, *id.* § 820(i), (k); it can compel testimony and production of documents through subpoenas, *id.* § 823(e); and it can ask a U.S. district court to order a person to comply with those subpoenas. *Id.*

Those are all exercises of executive power because they are conducted by executive officers. "The activities of executive officers may 'take legislative and judicial forms, but they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the 'executive Power,' for which the President is ultimately responsible." *United States v. Arthrex, Inc.*, 594 U.S. 1, 17 (2021) (citation modified) (quoting *City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013)). Last year, the D.C. Circuit recognized that *Humphrey's* purported line between "executive power" and "quasi-legislative or quasi-judicial power" is no longer tenable under recent Supreme Court precedent. *See Harris*, 160 F.4th at 1247; *see also Seila Law LLC v. CFPB*, 591 U.S. 197, 216 (2020) ("The Court's conclusion [in *Humphrey's*] that the FTC did not exercise executive power has not withstood the test of time."). That is so because the Supreme Court has consistently "broadened its understanding of what powers count as executive" so that "enforcement, rulemaking, and administrative adjudication [are] all classed as executive powers," *Harris*, 160 F.4th at 1247, and because "the Supreme Court increasingly has stressed that there are only three kinds of constitutional powers, and two of them are not delegable." *Id.* Congress cannot delegate

legislative power, *see id.* at 1248 (citing *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001)), and only life-tenured judges may exercise judicial power *See id.* (citing *Stern v. Marshall*, 564 U.S. 462, 483-84 (2011)). So by necessity, executive agencies exercise some portion of executive power. *Id.*

Therefore, even assuming it is true that the FMSHRC acts in a "purely adjudicatory" manner, *see* Compl. ¶¶ 10, 37, "there is nothing 'inherently judicial' about "adjudication.'" *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 909 (1991) (Scalia, J., concurring in part and concurring in the judgment), *quoted by Harris*, 160 F.4th at 1247. Just as promulgating rules governing primary conduct is not an "inherently" legislative function, adjudication is not "inherently" judicial one. *Id.* And since the FMSHRC can exercise neither legislative power, *see Whitman*, 531 U.S. at 472, Art. I, § 1, nor judicial power, *see Stern*, 564 U.S. at 483-84; Art. III, § 1, the Commission must exercise some portion of executive power. *See Harris*, 160 F.4th at 1248-49; Art. II, § 1, cl. 1. And any official who exercises executive power "must [] be controlled by the Chief Executive, in whom such power is vested," meaning the President is thus "entitled to cut [those officials'] tenure short." *Slaughter*, 2026 WL 1855612 at *18.

2. To be sure, the Supreme Court left open the possibility that it may be permissible to have "tenure protections for the judges of 'non-Article III courts,' such as the Tax Court and the Court of Federal Claims." *See id.*[1] The Supreme Court in *Myers* left open the same question. *See* 272 U.S. at 157-58. But regardless of the merits of that issue, the FMSHRC is nothing like any non-Article III court.

---

[1] In dissent, Justice Sotomayor expressed skepticism that there was any barrier preventing the President from removing officers on non-Article III courts. *See Slaughter*, 2026 WL 1855612, at *49 (Sotomayor, J., dissenting).

Non-Article III courts share several key features that the FMSHRC does not have. *First*, Congress expressly establishes non-Article III courts as courts rather than agencies. That is true of the U.S. Tax Court and U.S. Court of Federal Claims, which Congress established as "courts" located outside of the Executive Branch. *See* 26 U.S.C. § 7441 (Tax Court is established "under article I of the Constitution of the United States"); 28 U.S.C. § 171(a) (The Court of Federal Claims "is declared to be a court established under article I of the Constitution of the United States."). *Second*, non-Article III courts do not "wield [the President's] executive power in his stead." *Seila Law*, 591 U.S. at 238. Instead, many such entities either help Article III courts exercise the "judicial Power of the United States," U.S. Const. art. III, § 1, or exercise a form of judicial power on their own, such as bankruptcy courts that serve as adjuncts that help district courts exercise federal judicial power. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 80-81 (1982) (plurality opinion). *Third*, non-Article III courts operate in fields where there is a longstanding tradition of decision-making by judicial rather than executive bodies. The Tax Court, for example, follows in the tradition of England's Court of Exchequer, which resolved disputes between the Crown and taxpayers. *See* 3 William Blackstone, *Commentaries on the Laws of England*, 43-46 (1768). *Fourth*, non-Article III courts function as courts. They resolve "'cases' as that term is generally understood," "in strict accordance with a body of federal law," within the confines of a "judicial system." *Ortiz v. United States*, 585 U.S. 427, 437-438, 442. Unlike agencies, they do not formulate policy through adjudication.

The FMSHRC does not have those features. *First*, the FMSHRC was established as a "Commission" that "consist[s] of five members, appointed by the President by and with the advice and consent of the Senate," 30 U.S.C. § 823(a), rather than a "court." *Second*, as discussed above, the Commission exercises executive power rather than any sort of judicial power. *Third*, the

Commission lacks the historical pedigree of non-Article III courts, as it was created in 1977. *Fourth*, the FMSHRC does not function like a court and formulates policy through adjudicating cases.

Instead of acting like a non-Article III court, the Commission acts as an adjudicatory body within the executive branch, more like the Merit Systems Protection Board ("MSPB"). The D.C. Circuit recently held that the MSPB exercised executive power through its adjudicatory powers, in part because the MSPB could issue final decisions without court intervention. *Harris*, 160 F.4th at 1254. "The power to 'unilaterally issue final decisions' is a significant executive power," *id.* (quoting *Seila Law*, 591 U.S. at 219), and the MSPB could "take final action on any matter within [its] jurisdiction," and "order any Federal agency or employee to comply with any of its orders." *Id.* (citation modified). And the MSPB's decisions would "remain effective unless and until a court of appeals sets them aside." *Id.* The Commission has the exact same powers. Its orders are final, and they may be enforced in 30 days if they are not appealed during that time period. 30 U.S.C. § 816(b). And they will remain effective unless a court of appeals sets them aside. *See id.* § 816(a).

The D.C. Circuit also noted that the MSPB had significant remedial authority when it finds a violation, as the MSPB can order various legal and equitable remedies such as civil penalties, backpay, compensatory and consequential damages, fees and costs, reinstatement, and debarment. *See Harris*, 160 F.4th at 1255. So too here. The FMSHRC can assess civil penalties, 30 U.S.C. § 820(i), and once those penalties have been proposed, no one—including the Secretary—can "compromise[], mitigate[], or settle[]" them "except with the approval of the Commission." *Id.* § 820(k). The Commission can also order equitable remedies such as compensation for miners when a mine is idled due to several statutorily prescribed actions by the mine's owner. *Id.* § 821.

"The power to award 'legal and equitable relief in administrative adjudications' is an executive power . . . ." *Harris*, 160 F.4th at 1255 (quoting *Seila Law*, 591 U.S. at 219).

In short, the Commission exercises executive power even as it adjudicates cases. Therefore, the President was entitled to remove Marvit at will.

## II. Marvit's Other Claims Duplicate His Statutory Claim, and None Has Merit

Marvit also alleges several claims that duplicate his statutory claim. Specifically, he alleges that (1) any exercise of the Commission's authority while Marvit is removed would cause Chair Rajkovich to violate the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(1) & 706(2), Compl. ¶¶ 66-68; (2) Marvit is entitled to a declaratory judgment that he "is duly appointed and Senate-confirmed member of the Mine Safety Review Commission and that the President does not have authority to remove him absent inefficiency, neglect of duty, or malfeasance in office," *id.* ¶¶ 69-70; (3) Marvit's removal violates the separation of powers enshrined in Article I, section 8 and Article II, sections 2 and 3 of the U.S. Constitution, *id.* ¶¶ 71-72; (4) Marvit's due process rights were violated because he had a protected property interest in his employment through August 30, 2028, *id.* ¶¶ 73-76; (5) Marvit is entitled to a writ of mandamus to place him back in office, *id.* ¶¶ 77-79; and (6) he is entitled to "equitable relief to prevent and restrain ongoing statutory and constitutional violations by the Defendants." *Id.* ¶¶ 80-81. None has merit.

***Administrative Procedure Act.*** Marvit alleges that Chair Rajkovich cannot "exercise[] authority with respect to, or on behalf of, the Mine Safety Review Commission without regard to Commissioner Marvit's position as a member" because doing so would "'not [be] in accordance with law,' 'contrary to a constitutional right, power, privilege, or immunity,' and 'in excess of statutory jurisdiction authority, or limitations, or short of statutory right.'" Compl. ¶ 67 (quoting 5 U.S.C. § 706(2)).

But that argument fails for several reasons. *First*, an identical argument was raised in *Slaughter*. *See* 2026 WL 1855612, at *6 (stating the FTC Commissioner "alleged that her removal was ultra vires, violated the Administrative Procedure Act, and violated the Constitution"); Compl., *Slaughter v. Trump*, No. 1:25-cv-909, ECF No. 1, ¶¶ 44-46 (D.D.C. Mar. 27, 2025). The Supreme Court rejected that argument, finding that the FTC Commissioner could be removed despite raising an almost identical claim. *See* 2026 WL 1855612, at *6 (holding that the FTC's protection from removal "is contrary to the separation of powers enshrined in the Constitution").

*Second*, even though *Slaughter* alone is dispositive, the organic statute specifically allows "[t]he Commission . . . to delegate to any group of three or more members any or all of the powers of the Commission, except that two members shall constitute a quorum of any group designated pursuant to this paragraph." 30 U.S.C. § 823(c). There is no allegation that a quorum does not exist on the Commission now or any facts alleged explaining why any actions would be unlawful.

***Separation of Powers.*** Marvit argues that his removal violates the separation of powers because "[t]he Constitution empowers Congress to set reasonable limitations on the removal of the heads of independent agencies and it does not confer on the President an authority to violate Congress's scheme." Compl. ¶ 72. That is incorrect under *Slaughter*, which held the opposite is true: for-cause removal provisions violate the separation of powers when an agency "unquestionably exercises executive power" because any executive power "must [] be controlled by the Chief Executive, in whom such power is vested." 2026 WL 1855612, at *18; *see also Arthrex*, 594 U.S. at 17 (stating that regardless of form, under our constitutional structure, "[t]he activities of executive officers" are exercises of "the 'executive Power,' for which the President is ultimately responsible" (quoting *City of Arlington*, 569 U.S. at 304 n.4)).

***Due Process.*** Marvit also argues that he "has a protected property interest in his continued employment with the Mine Safety Review Commission through August 30, 2028." Compl. ¶ 74. But once again, this argument is foreclosed by *Slaughter*, in which the Court said that when a person exercises executive power and "serve[s] as the President's subordinate," then "the President [is] entitled to cut [his] tenure short." 2026 WL 1855612, at *18. That holding makes sense because principal officers who hold public office have no property interest in that office. *See Taylor v. Beckham*, 178 U.S. 548, 576-77 (1900) (stating that "public office is not property" and that "the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right").

***Declaratory Judgment Act.*** Marvit further alleges that he "is entitled to declaratory relief on the basis of all identified claims" and that this Court should declare that he "is a duly appointed and Senate-confirmed member of the Mine Safety Review Commission and that the President does not have authority to remove him absent inefficiency, neglect of duty, or malfeasance in office." Compl. ¶ 70. But the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, does not create a substantive cause of action and is instead a procedural, enabling statute that does not itself confer jurisdiction. *See, e.g.*, *Schilling v. Rogers,* 363 U.S. 666, 677 (1960) (noting the well-established rule that the Declaratory Judgment Act "is not an independent source of federal jurisdiction"); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). "Rather, the availability of declaratory relief presupposes the existence of a judicially remediable right." *C&E Servs., Inc. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (citation modified). Because Marvit has no independent judicially remediable right, his invocation of the Declaratory Judgment Act simply does not matter.

***Mandamus.*** Marvit alleges that he is entitled to a writ of mandamus to prohibit his removal from office because "[t]he Mine Act's removal restrictions impose a ministerial duty on the President and subordinate officials not to interfere with Mine Safety Review Commission members' tenure in office absent cause for inefficiency, neglect of duty, or malfeasance in office." Compl. ¶ 78. That argument too is incorrect.

*First*, Marvit is incorrect that the Mine Act imposes a "ministerial duty." To demonstrate that the "high standard" of a ministerial duty exists, a plaintiff must show that a duty is "so plainly prescribed as to be free from doubt and equivalent to a positive command" and must not depend on anything "involving the character of judgment or discretion." *Consol. Edison Co. v. Ashcroft*, 286 F.3d 600, 605 (D.C. Cir. 2002) (quoting *Wilbur v. United States*, 281 U.S. 206, 218-19 (1929)). Determining whether a person acted inefficiently, neglected a duty, or committed malfeasance in office involves judgment or discretion, and there is nothing in the statute that is "equivalent to a positive command." *Id.* (quoting *Wilbur*, 281 U.S. at 218-19).

*Second*, Marvit's claim fails for lack of jurisdiction. "Mandamus is 'one of the most potent weapons in the judicial arsenal,' a 'drastic and extraordinary remedy reserved for really extraordinary causes.'" *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 944 F.3d 945, 949 (D.C. Cir. 2019) (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004)). A plaintiff must "demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Id.* (citation omitted). "These three threshold requirements are jurisdictional." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).

As shown above, Marvit has not shown a "clear and indisputable" right to relief—as he is not entitled to his office and the President was free "to cut [his] tenure short." *Slaughter*, 2026 WL

1855612, at *18—or the violation of a "clear duty to act," as nothing requires the President to allow his subordinates to remain in office. Thus, mandamus is precluded.

***Equitable Relief for Statutory and Constitutional Violations.*** Finally, Marvit alleges that "[u]nder this Court's traditional equitable jurisdiction, [he] is entitled to equitable relief to prevent and restrain ongoing statutory and constitutional violations by the Defendants." Compl. ¶ 81. Marvit does not explain how this Court can prevent the President from removing subordinates under its equitable powers, but this is nothing more than a recasting of his statutory claims, which fails under *Slaughter*. The Court thus does not have the power to reinstate Marvit in his office because the President had the authority to remove him.

## CONCLUSION

The Court should dismiss this action in its entirety with prejudice.

Dated: July 28, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

DIANNE KELLEHER
Branch Director
Federal Programs Branch

CHRISTOPHER HALL
Assistant Director, Federal Programs Branch

/s/ *J. Stephen Tagert*
J. STEPHEN TAGERT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel.: (202) 305-5486
stephen.tagert@usdoj.gov
*Counsel for Defendants*